United States Title Guaranty Company, Respondent, *v.* Arthur A. Brown, Appellant.

Second Department, March 31, 1921.

Attorney and client — contract by corporation to represent landowners in condemnation proceedings — invalid agreement by corporation to divide fees and allowances with attorney — second agreement under which all fees and allowances were payable to attorney did not divest payment made under first — attorney need not account for fees received from outside parties — attorney must account for money equitably due plaintiff.

The plaintiff, a corporation, entered into a formal contract whereby the defendant, an attorney, agreed to appear of record for and represent landowners in condemnation proceedings, who had engaged the plaintiff to care for their interests, and to divide the fees and allowances with the plaintiff, and to act exclusively for the plaintiff so that any retainer that he should accept from other landowners would be for plaintiff's benefit. Proceedings were had and payments made under this contract for some time when

another contract was made by which all counsel fees and allowances should go to the defendant, and he was to refund advances made by plaintiff to cover witness fees, but the percentages which landowners agreed to pay plaintiff remained unaffected and defendant was to account for them.   In an action in which said contract was declared void,

*Held,* that the payments made under the first contract were not divested by the second contract.

The defendant was not obliged to account to the plaintiff for fees and percentages received by him from property owners who had no contract relations with the plaintiff.

The illegal agreement between the parties even when its illegality was declared still left the defendant under a duty to make restitution to plaintiff for money equitably due to it.

APPEAL by the defendant, Arthur A. Brown, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 26th day of April, 1920, on the decision of the court rendered after a trial at the Kings Special Term, adjudging as void and terminating the agreement between the parties of July 22, 1910, as well as all agreements, having or relating to that subject-matter, and directing that defendant make restitution to plaintiff for the sum of $6,989.99, with interest, together with costs.

This litigation has been before considered in 158 Appellate Division, 542; 86 Miscellaneous Reports, 287; 136 Appellate Division, 688, and 217 New York, 628.

When the city of New York began to condemn lands for its Catskill water supply, plaintiff engaged in the business of representing defending landowners.   For this purpose it had a department for such condemnation, and maintained a branch office at Kingston.   Originally Mr. H. T. Slosson had appeared as attorney of record for such owners, who had employed plaintiff on a percentage basis.   At that time defendant had not been admitted to the bar.

Later, in February, 1908, a formal agreement was made between plaintiff and the defendant.   It referred to pending and to future condemnation proceedings which he was to conduct.   He was to divide equally with plaintiff all allowances up to $57,000.   Above that figure, plaintiff was to have seventy-five per cent of all such allowances and counsel fees. Other provisions related to the expenses to be advanced by plaintiff, and to be accounted for in weekly statements,   Brown

Second Department, March, 1921.    [Vol. 195.

was to act exclusively for plaintiff, so that any contract or retainer from any person that he should accept, and any compensation thereunder, should be for plaintiff's sole use and benefit. Mr. Slosson was to be compensated out of Mr. Brown's share. Plaintiff also agreed on $130 as a weekly allowance to Brown and Slosson.

This exclusive representation was declared to involve services " so peculiar and individual in their character as to entitle said Company to an injunction restraining said Brown and said Slosson from violating any of the covenants herein above set forth for their exclusive services in the prosecution, preparation for trial and trial of such proceedings in the Counties of Ulster, Greene, Delaware and Schoharie."

Proceedings were had and payments were made without friction or controversy for about two years. But in 1910, at the instance of counsel for the city of New York, an investigation into this division of counsel fees and court allowances was started. The Special Term in Ulster county sent the matter to a referee, a step that seems to have moved the parties to make a new and different contract (Exhibit 1), which was signed on July 22, 1910, to become effective a few days later. By this (1910) agreement all allowances and counsel fees should go to Brown, out of which he was to pay counsel with the costs and expense of witnesses; also Mr. Slosson's charges; and as outlays should be collected, he was to refund to plaintiff its advances for past witness fees. The percentages that the landowners had contracted to pay plaintiff remained unaffected, and defendant undertook to account for them as he collected them.

After the complaint in this action had been finally sustained, the cause came on for trial at Special Term, where an interlocutory judgment was rendered on July 7, 1914. This adjudged as void and canceled the agreement of July 22, 1910, as well as all agreements between the parties having reference to the subject-matter thereof. The defendant was decreed to account " for and pay to the plaintiff the amount of the percentages of the awards collected by him on behalf of the plaintiff." He was to account also for " moneys paid to him by plaintiff for expenses and witness fees of the proceedings in which he acted under contracts made with the

plaintiff or with the defendant or with Harrison T. Slosson, and that he account for and pay over to the plaintiff such expenses as were advanced to him by the plaintiff and were thereafter allowed by the condemnation commissioners in such proceedings, and which were collected and were retained by the defendant."

After proceedings before a referee, his report was set aside, and the order of reference vacated on December 2, 1918. Instead of appointing another referee, the learned justice at Special Term himself undertook the burden of going on with the hearing of this delayed accounting. After taking proofs he filed his decision and findings, upon which was entered the judgment now under review. An appeal, heard herewith, from his order declining to modify his judgment (except to grant a stay pending the appeal) is the subject of a separate decision (196 App. Div. 909).

On this appeal it was urged that the agreement of July 22, 1910, not only had displaced the prior agreement of 1908, but by its retroactive effect had divested plaintiff of payments actually made and accepted under the first agreement. It was also contended that the judgment should not include an item of $3,821.49 for percentages or fees from property owners, who had not entered into any retainer or contract with plaintiff.

*Frederick N. Van Zandt*, for the appellant.

*Benjamin Reass* [*Hugo Hirsh* and *Emanuel Newman* with him on the brief], for the respondent.

PUTNAM, J.:

We hold that the payments by defendant made under the 1908 agreement were not divested by the second (1910) agreement. This conclusion is fortified by the subsequent transactions and the course of continued remittances, which plainly show the practical construction that the parties themselves placed on these agreements.

However, the item of $3,821.49 for fees and percentages received from outside property owners, stands on a different ground. Such property owners had no contract relations with or through the plaintiff. The opinion of the trial court and

Second Department, March, 1921.          [Vol. 195.

the interlocutory judgment thereon do not go so far as to call defendant to account for such outside fees. The interlocutory judgment, which fixed the terms and limitations of this accounting, required that the "defendant account for and pay to the plaintiff the amount of the percentages of the awards collected by him on behalf of the plaintiff."

But apart from these specific provisions limiting the scope of the accounting, there is no satisfactory ground in law or equity to decree to plaintiff such percentages from outside persons standing in no privity with the plaintiff.

This illegal agreement, even when its invalidity had been declared, we have held still left defendant under a duty to make restitution to plaintiff for money equitably due to it. But plaintiff as a corporation cannot be decreed counsel fees judicially allowed for compensation to other landowners. That would enforce and affirm the very invalidity that has been denounced. The whole $3,821.49 was collected after September 30, 1911, and of that sum $1,182.14 was received after this suit had been begun.

On September twenty-seventh defendant offered a payment of $11,031.78 upon the express understanding "that all disputes to date are settled and that hereafter I am only to pay you whatever fees I collect under your contracts and such witness fees as are collected by me on cases where you paid or advanced the witness fees." In the following January defendant took substantially the same ground.

This offer of September twenty-seventh was formally accepted by plaintiff's attorney, with a reservation not material here. Probably for want of consideration this exchange of letters and the ensuing payment did not make an effective release. It, however, separated and marked off such later collections from those of plaintiff's moneys equitably due. Plaintiff had no equitable claim to share in such fees which are *res inter alios*, and are only brought into the controversy as the fruit of an illegal and illicit secret agreement. The determination by the trial court did not go as far as this. It would be against equity precedents. (*McMullen* v. *Hoffman*, 174 U. S. 639.) Such invalidity need not be specially pleaded. (Williston Cont. § 1630a.)

The annulment of this contract, therefore, left plaintiff

entitled only to what was its own money and to restitution and repayment of its advances. Plaintiff may not have such fees as a form of damages for the breach of one of the illegal covenants, namely, to pay or divide counsel fees in suits not connected with retainers of the plaintiff. (13 C. J. 448, n. 24.)

The items of the $3,821.49 do not represent unpaid disbursements by plaintiff. The opinion does say: " The plaintiff advanced witnesses' expenses in most, if not all, of these cases." But in other totals all these advances have been charged against defendant and are embraced in this accounting.

The recovery should, therefore, be reduced by striking out and excluding the item of $3,821.49, and as thus modified, the judgment should be affirmed, with interest and costs of the action, but without costs of this appeal to either party.

Present — JENKS, P. J., RICH, PUTNAM, BLACKMAR and JAYCOX, JJ.

Recovery reduced by striking out and excluding the item of $3,821.49; as thus modified the final judgment is unanimously affirmed, with interest and costs of the action, but without costs of this appeal to either party. Settle order with corrected findings on notice.